**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NAVAJO NATION,<br><br>       *Plaintiff*,<br><br>   v.<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br>*et al.*,<br><br>       *Defendants*. | No. 20-cv-1093 (DLF) |

**MEMORANDUM OPINION**

Before the Court are the plaintiff's Motion for Summary Judgment, Dkt. 12, and the government's Cross-Motion for Summary Judgment, Dkt. 13.  For the reasons below, the Court will grant the plaintiff's motion and deny the government's motion.

**I.     BACKGROUND**

**A.     Legal Background**

"Congress enacted the Indian Self-Determination and Education Assistance Act ("ISDEAA") to help Indian tribes assume responsibility for programs or services that a federal agency would otherwise provide to the tribes' members."  *Navajo Nation v. U.S. Dep't of Interior*, 852 F.3d 1124, 1126 (D.C. Cir. 2017).  Under that Act, Indian tribes may enter "self-determination contract[s] . . . to plan, conduct, and administer programs" that the Secretary of the Interior operates for their benefit.  25 U.S.C. § 5321(a)(1).  To form such a contract, a tribe must first propose terms to the Secretary.  *Id.* § 5321(a)(2).  From there, "the Secretary shall . . . approve the proposal" within ninety days "unless" he "clearly demonstrates," or supports with "controlling legal authority," one of the five showings listed in § 5321(a)(2).  These grounds for

rejecting the proposal include that the tribe's "proposed project . . . cannot be properly completed or maintained by the proposed contract," *id.* § 5321(a)(2)(C), and that a tribe has requested funds "in excess of [its] applicable funding level," *id.* § 5321(a)(2)(D).

Upon entering a self-determination contract, tribes are entitled to IHS funding for both "direct program expenses" and "contract support costs." 25 U.S.C. § 5325(a)(3)(A). This funding may be awarded through Annual Funding Agreements (AFAs), which "represent[] the negotiated agreement of the Secretary to fund, on an annual basis, the programs, services, activities and functions transferred to an Indian tribe." 25 C.F.R. § 900.6. The process for approving an AFA, like that of forming a self-determination contract, begins with a proposal from the tribe to the Secretary. *See id.* § 900.32. If a proposed AFA is "substantially the same" as the prior AFA, the Secretary "shall approve and add to the contract the full amount of funds to which the contractor is entitled." *Id.* Otherwise, the portions of the proposal that are not "substantially the same" are subject to "declination criteria and procedures" that apply to self-determination contracts. *Id.* Thus, the Secretary may decline to approve those portions "only . . . for one of [the] five specific reasons" listed in 25 U.S.C. § 5321(a)(2). *Id.* § 900.22.

If the Secretary declines to approve a proposed AFA, the affected tribe may challenge the Secretary's decision in federal district court. *See* 25 U.S.C. § 5331(a); 25 C.F.R § 900.153. As an alternative, the tribe may appeal the decision to the Interior Board of Indian Appeals (IBIA), with the possibility of further review in federal court. *See* 25 C.F.R. § 900.158; 25 U.S.C. § 5331(a). Finally, the tribe may request an informal conference to be "conducted by a designated representative of the Secretary." 25 C.F.R. § 900.155(c). If the tribe elects to participate in an informal conference, the presiding representative will issue a written report that "summarizes what happened at the [] conference and [contains] a recommended decision." *Id.* § 900.156(a).

If a tribe is "dissatisfied" with that decision, it may appeal within thirty days to the IBIA.  *Id.* § 900.156(b).  Otherwise, "the recommended decision becomes final."  *Id.* § 900.157.

### B.    Factual Background

The Navajo Nation is a federally recognized Indian tribe that operates a forestry management program pursuant to a self-determination contract.  *See* Pl.'s Statement of Material Facts Not in Dispute ¶ 1, Dkt. 12.  Under that contract, the Nation receives funding through Annual Funding Agreements (AFAs) and Successor Annual Funding Agreements (SAFAs).  *Id.* ¶ 2.  On September 28, 2019, the Nation submitted a proposed SAFA for contract year 2020, which requested $737,745 to cover direct program expenses.  Compl. Ex. A at 33, Dkt. 1-1.  The SAFA also proposed modifying which forest management functions the contract covers.  *See id.* at 22–26.  Under its terms, the Nation would be permitted to "operate a woodlot to produce firewood for sale to the public" and would be exempt from several reporting requirements that were contained in the 2019 SAFA.  *Id.* at 25.

On December 19, 2019, the Secretary denied the Nation's proposed SAFA.  *See* Compl. Ex. B, Dkt. 1-2.  To support that denial, the Secretary found that the Nation requested funding "in excess of the . . . funding level" available under the parties' contract.  *Id.* at 3 (citing 25 C.F.R. § 900.22(d)).  He also found that the SAFA's subject matter could not "be properly completed or maintained by the proposed contract," 25 U.S.C. § 5321(a)(2)(C).  *Id.* at 2–3.

On January 7, 2020, the Nation requested the review of that decision in an informal conference.  *See* Compl. Ex. C at 3, Dkt. 1-3.  Following that conference, the Secretary's representative directed that the Nation receive $717,736.77 for direct program expenses under its contract.  *Id.* at 4.  The representative also found that the 2020 SAFA was not "substantially different" from the 2019 SAFA, which required approving its terms irrespective of the

declination criteria in 25 U.S.C. § 5321(a)(2).  *Id.* at 7.  Finally, the representative found that, even if the declination criteria applied, the Secretary failed to show that the subject matter of the SAFA could not "be properly completed or maintained by the proposed contract."  *Id.* (quoting 25 U.S.C. § 5321(a)(2)(C)).  Having explained those findings, the representative then directed the parties to "convene and make a good faith effort, on a government-to-government basis, to develop a CY2020 SAFA that complies with the statutory requirements at" 25 U.S.C. § 5329. *Id.* at 6.  In the meantime, the representative ordered, the 2019 SAFA would remain in place.  *Id.* Because the Nation did not appeal the representative's decision within thirty days, it became final on March 30, 2020.  25 C.F.R. § 900.157.

On April 4, 2020, the Nation filed the instant Complaint, Dkt. 1, which alleged that the Secretary had "not complied with the Decision of the Secretary's Designated Representative." Compl. ¶ 17.  The Complaint seeks declaratory and injunctive relief under 25 U.S.C. § 5331(a), *see* Compl. ¶¶ 25–26, which authorizes tribes to challenge "any action by an officer of the United States" that is "contrary to this chapter"—*i.e.*, ISDEAA, 25 U.S.C. § 5331(a).  Among other things, the Complaint requests that the Court "compel[] the Defendants to approve the 2020 SAFA and Statement of Work as proposed by the Nation on September 28, 2019 and to immediately award and provide applicable funding of at least $717,736.77."  Compl. ¶ 26.

On June 10, 2020, the Secretary awarded the Nation $740,341.00 for direct program expenses "[i]n accordance with the Recommended Decision."  Pl.'s Mot. Ex. 1 at 2, Dkt. 12-1. The Secretary also informed the Nation that the 2019 SAFA "will remain in place" pending the negotiations described in the Recommended Decision.  *Id.*  In response, the Nation told the Secretary that it believed the continuance of the 2019 SAFA to be "contrary to law."  Pl.'s Mot. Ex. 2 at 1, Dkt. 12-2; *see also* Pl.'s Mot. Ex 3. at 1–2, Dkt. 12-3.

On September 25, 2020, the Nation moved for summary judgment, Dkt. 12.  On November 4, 2020, the Secretary cross-moved for summary judgment, Dkt. 13.  In the Nation's memorandum supporting its motion, the tribe acknowledges that the dispute over its funding level is now "moot," on account of the Secretary's June 10 award.  Pl.'s Mot. at 1; *see also* Pl.'s Mem. in Supp. of Summ. J. at 8 ("there is no longer any issue as to the amount of funding to be provided pursuant to the 2020 SAFA").  As such, the only issue remaining in this case is whether the Secretary must approve the Nation's proposed language for the 2020 SAFA.

This Court has subject-matter jurisdiction under § 5331(a), which confers original jurisdiction over any "claim against the [] Secretary arising under" ISDEAA.  The Nation has standing to sue because the continued effect of the 2019 SAFA limits the manner in which the tribe may expend its resources, *see* Compl. Ex. A at 25, and because that limit is an injury that is particularized, imminent, and concrete.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Finally, the pending motions are ripe for review.

## II.    LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  And a dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.    ANALYSIS

Under ISDEAA and its implementing regulations, the Secretary "shall" approve a proposed AFA within ninety days "unless" he makes one of the showings listed in § 5321(a)(2). 25 U.S.C. § 5321(a)(2); *see also* 25 C.F.R. § 900.22.  These provisions further require that the Secretary's factual findings must be "clearly demonstrate[d]" and his legal conclusions must be "supported by a controlling legal authority."  25 U.S.C. § 5321(a)(2).  Here, the Secretary denied the Tribe's 2020 SAFA on the grounds that its terms could not be "properly completed" under the contract, 25 U.S.C. § 5321(a)(2)(C), and that the Nation requested funds over "the applicable funding level," *id.* § 5321(a)(2)(D).  But a representative of the Secretary reached contrary conclusions on both issues, which became final for the agency in March 2020.  *See* 25 C.F.R. § 900.157.  And even now, the Secretary does not argue that its initial denial either "clearly demonstrated" its factual basis or adequately "supported" its legal conclusions, as § 5321(a)(2) and its regulations mandate.  Instead, the Secretary disputes whether § 5321(a)(2) applies at all in these circumstances, *see* Defs.' Mem. at 14, Dkt. 13-1, and if it does, whether its remedies apply, *see* Defs.' Reply at 5, Dkt. 17.  The Secretary is incorrect on both fronts.

The plain text of the section sets up a simple dichotomy: the Secretary "shall" approve a proposed contract "unless" he satisfies certain conditions.  25 U.S.C. § 5321(a)(2).  "[T]he word 'shall' usually connotes a requirement," *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016), and no language in § 5321(a) diffuses that presumption.  Further, although ISDEAA contains one exception from the above dichotomy, *see id.* § 5321(a)(2) (allowing the Secretary to "extend or otherwise alter the 90-day period" for answering a proposed contract

with "the voluntary and express written consent of the" affected tribe), the enumeration of that one exception suggests the absence of others, *see Russello v. United States*, 464 U.S. 16, 23 (1983).  Finally, allowing the Secretary to resume negotiations over a proposal after having erroneously denied the same proposal would render § 5321(a)(2)—and its requirement to either approve such proposals or adequately justify their denial—"superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).  Thus, because the Secretary did not satisfy the "unless" clause of § 5321(a)(2), the section's "shall" clause requires him to approve the proposed SAFA.

The remedies provided by § 5321(a)(2) apply here, even though the Tribe invoked the statute's informal conference process, rather than its other appeal provisions.  The purpose of an informal conference is to review the Secretary's initial denial of a proposed contract, *see* 25 C.F.R. §§ 900.153, 900.155, which is governed by § 5321(a)(2).  And when a federal statute limits the remedies available in an initial adjudication, the default rule is that the same limit applies on appeal of that adjudication.  *See*, *e.g.*, 5 U.S.C. § 557(b) ("On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.").  Here, no statute expands the remedies available in an informal conference beyond those listed in § 5321(a)(2).  *See* Defs.' Reply at 5.  And the Secretary may not, through regulation, expand the remedies that Congress has made available by statute.  *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Thus, the remedies available to the Secretary were restricted to those set forth in § 5321(a)(2).

The Secretary's remaining arguments do not persuade, *see* Defs.' Mem. at 10–13.  First, the Nation did assert the claims it presses here.  *See* Compl. ¶ 20 ("[w]here the [Secretary] declines a proposal on a ground that is legally insufficient, the result is that the proposal is

approved"); *id.* ¶ 21 ("[b]ecause the [Secretary's] grounds for declining the Nation's 2020 SAFA were legally insufficient, the SAFA . . . [is] approved as a matter of law").  And by alleging that the Secretary's initial decision was "legally insufficient" and by requesting "injunctive relief compelling the Defendants to approve the 2020 SAFA," *see id.* ¶¶ 21, 26, the complaint necessarily challenged the Recommended Decision, which, first, affirmed the initial decision insofar as it left the 2019 SAFA in place and, second, would be modified by the requested relief. This case thus bears no resemblance to those in which this Court has declined to reach "new claims . . . not raised in the complaint." *Quinn v. District of Columbia*, 740 F. Supp. 2d 112, 130 (D.D.C. 2010) (brackets omitted); *see id.* ("Plaintiffs did not plead a common law claim of promissory estoppel in their Complaint nor does the Complaint contain any suggestion that Plaintiffs intended to assert such a claim."); *Winder v. District of Columbia*, 555 F. Supp. 2d 103, 109 (D.D.C. 2008) ("Count IX of the complaint does not plead a breach of contract claim based on any earlier contracts, [so] Winder's attempt to add such a claim through summary judgment briefing is impermissible."); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) (The plaintiff could not raise "additional violations of the ADA not mentioned in the complaint.").

Second, the Nation did not forfeit its challenge to the renegotiation required by the Recommended Decision by seeking to enforce the decision in another respect, *see* Defs.' Mem. at 12.  As discussed above, the Nation argued that the decision required the Secretary to provide it $717,736.77 for direct program expenses.  *See* Compl. ¶¶ 15–17.  At the same time, the Nation challenged the decision's command that the parties suffer the 2019 SAFA until they negotiate updated terms.  *See* Compl. ¶¶ 20–21, 26.  Without citing any legal authority, the Secretary argues that the tribe "should not be able to represent that an agency action is final and

enforceable" in one respect, only to "seek an injunction against the same agency action" in the same case.  Defs.' Mem. at 12.  But there is nothing unusual about relying on one part of an agency action while challenging another.  The Administrative Procedure Act (APA) contemplates that very course by creating a cause of action to challenge "agency action," 5 U.S.C. § 702, and defining "agency action" to include "*a part of* an agency rule, order, license, sanction, relief, or the equivalent or denial thereof," *id.* § 551(13) (emphasis added).

Finally, the Tribe did not forfeit any challenge to the Recommended Decision by failing to challenge it within thirty days, *see* Defs.' Reply at 5–6.  The Secretary invokes 25 C.F.R. § 900.157, which provides the outcome of an informal conference becomes "final" if it is not appealed within that time, then reads the word "final" to mean unreviewable.  *See id.*  But in the administrative context, the word "final" instead describes a *prerequisite* to judicial review.  With exceptions not relevant here, the APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  An agency's decision is final, in this respect, when it "mark[s] the consummation of the agency's decisionmaking process" and when it is "one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted).  Against that backdrop, Congress has regularly specified both the conditions on which an agency action will become "final" and those on which that action will later be subject to judicial review.  *See*, *e.g.*, 42 U.S.C. § 1395oo(f)(1) (providing, first, that a "decision of the Board shall be final unless the Secretary . . . reverses, affirms, or modifies the Board's decision" and, second, that certain parties "shall have the right to obtain judicial review of any final decision of the Board").  So too here.  Section 900.157 indicates that recommended decisions both mark the consummation of the Secretary's decisionmaking and

determine tribes' rights under their contracts.  *See Bennett*, 520 U.S. at 177–78.  Thereafter, §

5331(a) of ISDEAA authorizes the review of recommended decisions in federal court.  *See* 25

U.S.C. § 5331(a) (allowing judicial review of any "claim against the . . . Secretary arising under"

ISDEAA); *see also id.* § 5321(b)(3) (emphasizing that a tribe "may, in lieu of filing [an

administrative] appeal, exercise the option to [immediately] initiate an action in a Federal district

court").  Nothing in this familiar scheme bars the Nation's complaint, which properly challenges

the Recommended Decision pursuant to § 5331(a).

Because § 5321(a)(1) requires that the Nation's 2020 Successor Annual Funding

Agreement be approved, the Secretary shall approve it.

## CONCLUSION

For the above reasons, the plaintiff's Motion for Summary Judgment, Dkt. 12, is

GRANTED and the government's Cross-Motion for Summary Judgment, Dkt. 13, is DENIED.

A separate order consistent with this decision accompanies this memorandum opinion.


_____
DABNEY L. FRIEDRICH
United States District Judge

September 16, 2021